Ali Salamirad (SBN 209043)
Neda Cate (SBN 274971)
**SMTD LAW LLP**
17901 Von Karman Avenue, Suite 500
Irvine, California 92614
(949) 537-3800
as@smtdlaw.com; ncate@smtdlaw.com

Attorneys for Plaintiff
ARGONAUT INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>MOHSEN AHMADI, an individual; HIGHLAND CONSTRUCTION, INC., a California corporation; M. AHMADI CONSTRUCTION AND ENGINEERING COMPANY; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 8:24-cv-000429<br><br>ARGONAUT INSURANCE COMPANY'S COMPLAINT FOR:<br><br>(1)  BREACH OF CONTRACT – INDEMNITY AGREEMENT;<br><br>(2)  SPECIFIC PERFORMANCE FOR ACCESS TO BOOKS AND RECORDS;<br><br>(3)  SPECIFIC PERFORMANCE FOR POSTING OF COLLATERAL; AND<br><br>(4)  QUIA TIMET |

Plaintiff ARGONAUT INSURANCE COMPANY (referred to as "ARGO" or the "Surety") files this Original Complaint ("Complaint") against defendants Mohsen Ahmadi, an individual ("Ahmadi"), HighLand Construction, Inc., a California corporation ("Highland"), M. Ahmadi Construction and Engineering Company ("Ahmadi Construction"), and DOES 1 through 100, inclusive (collectively referred to as the "Defendant Indemnitors"), and alleges as follows:

/////

## PARTIES

1. ARGO is, and at all times mentioned herein was, a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Chicago, Illinois. ARGO is, and at all times mentioned herein was, qualified and authorized to transact business in the state of California as a surety.

2. Ahmadi is an individual citizen of the State of California and may be served with process at his residence located at 133 North Pixley Street, Orange, California 91364, or wherever he may be found.

3. ARGO is informed and believes, and thereon alleges, that defendant Highland is now, and at all times mentioned herein was, a California corporation, with its principal place of business in the County of Orange, California. Highland may be served with process through its registered agent, Mohsen Ahmadi, at 133 North Pixley Street, Orange, California 91364, or wherever he may be found.

4. ARGO is informed and believes, and thereon alleges, that defendant Ahmadi Construction is now, and at all times mentioned herein was, a sole proprietorship, with its principal place of business in the County of Orange, California. Ahmadi Construction may be served with process through its sole owner, Mohsen Ahmadi, at 133 North Pixley Street, Orange, California 91364, or wherever he may be found.

5. On information and belief, there are other unknown or potential defendants that have not yet asserted claims against the bonds in this matter, or who are otherwise unknown to ARGO. DOES 1 through 100 are the fictious names of those defendants. When, and if, the identity of such defendants is ascertained, ARGO will amend this Complaint by inserting true names in place of fictitious names in accordance with Rule 10 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1332(a) because: (i) there is complete diversity between ARGO and Defendant Indemnitors, and (ii) the amount in controversy exceeds $75,000, exclusive of interest and

costs.

7. Because the Plaintiff ARGO is a citizen of Illinois for diversity purposes, and all defendants are citizens of California for diversity purposes, complete diversity exists, and this Court has diversity jurisdiction over this matter.

8. Venue is proper in this Court pursuant to 28 U.S.C. section 1391(b)(2) because a substantial part of the events or omissions giving rise to ARGO's claims occurred in the region governed by the United States District Court for the Central District of California, Southern Division.

## GENERAL ALLEGATIONS

9. On or about June 24, 2020, as partial consideration for and to induce ARGO to issue surety bonds for and on behalf of Highland ("Bonds"), the Defendant Indemnitors each executed a General Indemnity Agreement (the "Indemnity Agreement"), in favor of ARGO under which they promised to completely indemnify and hold ARGO harmless from "any and all Losses, as well as any other expense," including attorney fees and costs incurred by ARGO, as a result of having issued the Bonds. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit 1** and incorporated herein by reference.

10. Under the express terms of the Indemnity Agreement, "Losses" are broadly and generally defined as including, *inter alia*, all sums, costs, expenses, premiums and other amounts paid or required to be paid by ARGO as a result of having issued the Bonds:

11. Under the Indemnity Agreement, Losses is defined as:

> [A]ny and all (a) sums paid by Surety to claimants under the Bonds, (b) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c) all costs and expenses incurred in connection with investigating, undertaking the performance of obligations, arranging for and/or completion of work, paying, or litigating any claim under the Bonds, including but not limited to consultant and legal fees and expenses, technical and expert witness fess and expenses, (d) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, consultant and legal fees and expenses, (e) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f) all other amounts payable to Surety according to the terms and conditions of this Agreement.

12. Under the Indemnity Agreement, the Defendant Indemnitors agreed that, "vouchers, or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s)."

13. The Defendant Indemnitors further agreed to provide ARGO with the right to access the Defendant Indemnitors' books and records, for the purpose of resolving claims against ARGO:

> Until the Surety determines all liability under all Bonds is terminated or until it is fully reimbursed on all amounts due to it under this Agreement and any other agreement, the Surety shall have the right of reasonable access to the books, records, and accounts of the Indemnitors for the purpose of inspection, copying or reproduction.

14. Further, by execution of the Indemnity Agreement, the Defendant Indemnitors obligated themselves to fully collateralize ARGO, by making a deposit of collateral security, upon demand, if losses were either incurred or anticipated to be incurred by ARGO as a result of having issued the Bonds:

> In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses.

15. In reliance upon the Defendant Indemnitors' promises and obligations under the Indemnity Agreement, on or about September 21, 2021, ARGO issued Payment Bond and Performance Bond Number CMGP00004865 with Highland as principal and the State of California – Department of Transportation ("CalTrans") as obligee in relation to Highland's subcontract with CalTrans for the construction of the project known as Contract No. 12-0Q3904, Reconstruct Reinforced Structural Concrete Bridge and Barrier ("Concrete Bridge Project"). The Payment Bond and Performance Bond were each numbered CMGP00004865 and each in the penal sum of $2,357,628.75 ("Concrete Bridge

Bonds"). Attached hereto as **Exhibit 2** is a true and correct copy of the Concrete Bridge Bonds.

16. Similarly, in reliance upon the Defendant Indemnitors' promises and obligations under the Indemnity Agreement, on or about December 28, 2020, ARGO issued Payment Bond and Performance Bond Number CMGP00003909 with Highland as principal and CalTrans as Obligee in relation to Highland's subcontract with CalTrans for the construction of the project 12-0P6604, 12-Ora-1-12.2/13.3 (the "Crystal Heights Drive Project"). The Payment Bond and Performance Bond were each numbered CMGP00003909 and each in the penal sum of $459,899.00 ("Crystal Heights Drive Bonds"). Attached hereto as **Exhibit 3** is a true and correct copy of the Crystal Heights Drive Bonds.

17. Similarly, in reliance upon the Defendant Indemnitors' promises and obligations under the Indemnity Agreement, on or about July 15, 2020, ARGO issued Payment Bond and Performance Bond Number CMGP00003377 with Highland as principal and CalTrans as Obligee in relation to Highland's subcontract with CalTrans for the construction of the project Contract No. 07-301804 Los Angeles County in San Dimas and Glendora From Route 57/10 Separation to Route 57/210 Separation (the "San Dimas Project"). The Payment Bond and Performance Bond were each numbered CMGP00003377 and each in the penal sum of $2,062,964.05 ("San Dimas Bonds"). Attached hereto as **Exhibit 4** is a true and correct copy of the San Dimas Bonds.

18. The Concrete Bridge Bonds, the Crystal Heights Drive Bonds, and the San Dimas Bonds shall be collectively referred to herein as the "Bonds." The Concrete Bridge Project; the Crystal Heights Drive Project; and the San Dimas Project shall be collectively referred to herein as the "Projects."

19. After the Bonds were issued, Highland failed to satisfactorily perform its contractual obligations and/or discharge indebtedness on the Projects resulting in claims made against the Bonds ("Bond Claims"), which resulted in Defendant Indemnitors' "Default" under the express terms of the Indemnity Agreement.

20. On the Crystal Heights Drive Project, the Surety was sued by the Griffith Company regarding a payment bond claim that it was asserting against Highland, the Surety, and the Crystal Heights Drive Bond ("Griffith Lawsuit").

21. On the San Dimas Project, the Surety received a payment bond claim for $3,937.50 from Hardy & Harper, Inc.

22. On the Concrete Bridge Project, the Surety received a payment bond claim for $135,000.00 from Pacific Steel Group, a payment bond claim for $20,940.00 from MSL Electric, a payment bond claim for $109,483.23 from Dayton Superior Corporation, and a performance bond claim from CalTrans (the Griffith Company, Pacific Steel Group, MSL Electric, Dayton Superior Corporation, and CalTrans claims against the Bonds are hereinafter referred to as the "Claims").

23. The Surety made payment to Pacific Steel Group in the amount of $135,000.00, payment to MSL Electric in the amount of $20,940.00, and payment to CalTrans in the amount of $2,357,628.75. In total, the Surety made payments in the amount of $2,513,568.75 regarding claims made against the Concrete Bridge Bonds.

24. The Surety is currently investigating the Dayton Superior Corporation claim on the Concrete Bridge Project.

25. Additionally, as of January 31, 2024, the Surety has incurred an additional $63,499.22 in expenses in furtherance of its investigations into and defense of the Claims and to resolve the Griffith Lawsuit.

26. Accordingly, as of the date of this Complaint, the Surety has incurred losses, excluding expenses and attorney fees, in the amount of $2,576,136.47 ("Incurred Loss").

27. As of the date of this Complaint, ARGO has anticipated losses in the amount of $113,420.73 ("Anticipated Loss").

28. ARGO anticipates that its Incurred Loss will continue to increase due to additional attorney's fees, interest, costs associated with the instant lawsuit, and the Surety's efforts to pursue its claims against the Defendant Indemnitors.

29. By virtue of these Claims and payment of these Claims, obligations of the

Defendant Indemnitors have been triggered under the Indemnity Agreement.

30. By letter dated May 5, 2023, ARGO demanded that the Defendant Indemnitors immediately post Collateral Security to ARGO in the amount of $2,473,975.45 representing the amount ARGO deemed necessary as of the date of that letter to protect and exonerate ARGO from Loss, as well as actual or anticipated expenses, costs, and fees, within five (5) days of the date of the letter. Attached hereto as **Exhibit 5** is a true and correct copy of the letter.

31. As of the date of this filing, the Defendant Indemnitors have refused to do anything to hold the Surety harmless.

32. Despite ARGO'S written demands, the Defendant Indemnitors have failed to reimburse, indemnify, collateralize or exonerate ARGO as required under the Indemnity Agreement.

33. Defendant Indemnitors have breached their obligations under the Indemnity Agreement by failing to reimburse, indemnify, collateralize, hold harmless and exonerate ARGO and failing and refusing to give ARGO access to their books, records, and accounts.

34. All conditions precedent to recovery by the Surety from the Defendant Indemnitors have occurred or have been performed.

35. To the extent that ARGO makes any payments under the Bonds, the Defendant Indemnitors further agreed that "voucher(s), or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s)." (**Exhibit 1**, p. 1, ¶ 2).

## FIRST CAUSES OF ACTION

### (Breach of Contract Against All Defendant Indemnitors and DOES 1 through 100)

36. ARGO re-alleges and incorporates by reference as though set forth in full herein all allegations contained in the previous paragraphs of this Complaint.

37. Defendant Indemnitors have failed, and continue to fail to exonerate,

- 7 -
**ARGONAUT INSURANCE COMPANY'S COMPLAINT**

indemnify and save ARGO from and against all loss as a result of having issued the Bonds, which are Defendant Indemnitors' express obligations under the clear and unambiguous terms of the Indemnity Agreement.

38. ARGO has performed, or has been excused from performing, all of the terms, covenants and conditions on its part to be performed under the Indemnity Agreement, if any exist.

39. ARGO has incurred and will continue to incur Losses as a result of Defendant Indemnitors' material breaches of the Indemnity Agreement.

40. As a result of Defendant Indemnitors' material breaches of the Indemnity Agreement, ARGO estimates a net loss in excess of $2,526,924.93 and in an amount to be proven at trial.

41. Because Defendant Indemnitors have breached their obligations under the Indemnity Agreement, ARGO has been forced to retain counsel to enforce its rights to payment under the same. The terms of the Indemnity Agreement provide that ARGO shall be entitled to charge for any and all disbursements made in good faith in and about the matters contemplated by the Indemnity Agreement. By the terms of the Indemnity Agreement, good faith disbursements includes any and all payments, Losses, attorneys' fees, and other expenses.

THEREFORE, ARGO requests a judgment as prayed for below.

## SECOND CAUSE OF ACTION

**(Specific Performance for Access to Books and Records Against Defendant Indemnitors and DOES 1 through 100)**

42. ARGO re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

43. On or about June 24, 2020, as partial consideration for and to induce ARGO to issue surety bonds for and on behalf of Highland, the Defendant Indemnitors each executed the Agreement.

/////

- 8 -
**ARGONAUT INSURANCE COMPANY'S COMPLAINT**

44. ARGO has performed, or has been excused from performing, all of the terms, covenants and conditions on its part to be performed under the Indemnity Agreement, if any exist.

45. Pursuant to Paragraph 6 of the Indemnity Agreement, the Defendant Indemnitors grant ARGO the right to reasonable access to Defendant Indemnitors' books, records, and accounts for purposes of examining the same until ARGO determines all liability under all Bonds is terminated or until it is fully reimbursed on all amounts due to it under the Indemnity Agreement.

46. In order to resolve the anticipated and actual Loss on the payment and performance Bonds, ARGO requires access to Defendant Indemnitors' books, records, and accounts.

47. ARGO therefore demands specific performance against the Defendant Indemnitors compelling them to make available to ARGO all of their records including, but not limited to, books, records, and accounts pursuant to the books and records provision of the Indemnity Agreement.

THEREFORE, ARGO requests a judgment as prayed for below.

## THIRD CAUSE OF ACTION

### (For Specific Performance - Deposit of Collateral

### Against All Defendants)

48. ARGO re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

49. Under Paragraphs 4 and 5 of the Indemnity Agreement, Defendant Indemnitors promised to immediately, upon demand, deposit a sum of money as collateral equal to the reserve account set by ARGO to cover anticipated loss as a result of having issued the Bonds. ARGO has established reserve accounts to cover the claims against the Bonds.

50. ARGO is informed and believes and thereon alleges that Defendant Indemnitors, and each of them, have failed to tender funds under the express terms of

the Indemnity Agreement. Defendants, and each of them, have failed and refused to deposit collateral and/or reimburse Surety as required under the Indemnity Agreement.

51. ARGO's remedy at law is inadequate, as stipulated by Defendant Indemnitors in the Indemnity Agreement, in that Surety will suffer irreparable harm and will not have an adequate remedy at law should Defendant Indemnitors fail to perform the collateral requirement. In addition, under the terms of the Indemnity Agreement, ARGO may enforce its collateral demand by seeking specific performance to compel deposit of such collateral.

THEREFORE, ARGO requests a judgment as prayed for below.

## FOURTH CAUSE OF ACTION

(*Quia Timet* Against Defendant Indemnitors and DOES 1 through 100)

52. ARGO re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

53. ARGO reasonably believes that it will incur immediate and substantial Losses, costs, damages, attorney's fees and expenses by reason of, or in consequence of, the Bonds. ARGO has already incurred losses in the amount of $2,526,924.93 for claims paid to date as a consequence of issuing the Bonds.

54. The Defendant Indemnitors are obligated, under the equitable doctrine of *Quia Timet*, to post collateral security with ARGO for all Losses, costs, damages, attorney's fees and expenses incurred by reason of, or in consequence of, the issuance and maintenance of the Bonds.

55. ARGO is entitled to a prejudgment order requiring Defendant Indemnitors, and each of them, jointly and severally, to post collateral with ARGO in an amount sufficient to cover all claims, Losses, costs, damages, attorney's fees, and expenses incurred by reason of, or in consequence of, the issuance and maintenance of the Bonds.

THEREFORE, ARGO requests a judgment as follows:

/////

# PRAYER FOR RELIEF

WHEREFORE, ARGO prays for judgment in this action against Defendant Indemnitors, jointly and severally, and DOES 1 through 100, awarding ARGO the following:

### FIRST CAUSE OF ACTION AGAINST DEFENDANT INDEMNITORS AND DOES 1 THROUGH 100

1. Indemnity for the loss or liability incurred as alleged above in an amount to be proven at trial, but no less than $2,526,924.93;
2. Pre-judgment and post-judgment interest on such amount at the maximum legal rate;
3. Attorneys' fees and costs incurred herein; and
4. Such other relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION AGAINST DEFENDANT INDEMNITORS AND DOES 1 THROUGH 100

1. For an order of specific performance compelling Defendant Indemnitors, and each of them, to specifically perform by compelling them to make available to ARGO all books, records, and accounts as required by the Indemnity Agreement; and
2. Such other relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION AGAINST DEFENDANT INDEMNITORS AND DOES 1 THROUGH 100

1. For an order of specific performance compelling Defendant Indemnitors, and each of them, to specifically perform by compelling them to post collateral as required by the Indemnity Agreement; and
2. Such other relief as the Court deems just and proper.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANT INDEMNITORS AND DOES 1 THROUGH 100

1. For an order of Quia Timet, compelling Defendant Indemnitors in the course of this action to specifically perform by depositing collateral security in an amount

1  reasonably sufficient to protect ARGO from claims against the Bonds; and

2.     For such other and further relief as the Court may deem just and proper.

Dated: February 28, 2024              **SMTD LAW LLP**

                                    By:  /s/ Ali Salamirad
                                          Ali Salamirad
                                          Neda Cate
                                          Attorneys for Plaintiff
                                          ARGONAUT INSURANCE COMPANY

**ARGONAUT INSURANCE COMPANY'S COMPLAINT**